## LOUD *v.* POMONA LAND AND WATER COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 194. Argued April 13, 16, 1894. — Decided May 19, 1894.

By an agreement under seal the party of the first part agreed that, after the making of the payments and the full performance of the covenants as agreed to by the party of the second part, he would convey to the party of the second part, certain described lands in California, together with a specified number of shares in the stock of an irrigation company, representing a certain pressure of water, to be delivered to the party of the second part on making payment in full for the land. The party of the second part agreed to pay for the land in fixed consecutive payments, and both parties agreed that the instrument should not be construed as a conveyance, equitable or otherwise, and that, until delivery of the formal deed or tender of all payments precedent thereto, the party of the second part should have no title, equitable or otherwise, to the premises. *Held,*

(1) That these covenants were independent, and that the payment or tender of payment of the purchase price for the land was a condition precedent to the right to the conveyance;

(2) That the party of the second part, on making the contract payments, became entitled to receive the agreed number of shares in the irrigation company, subject to the by-laws of such company, but not stock which represented the title to water or water rights to the extent of such pressure.

THE Pomona Land and Water Company, defendant in error, a corporation duly organized under the laws of the State of California, brought this action of covenant against Henry M. Loud, a citizen of the State of Michigan, to recover various sums of money due upon agreements under seal, embodied in twenty contracts and nine applications for the sale and purchase, at different prices, of separate and distinct parcels of land lying and being in the State of California, together with designated shares of stock in certain irrigation companies.

The twenty contracts declared on in counts one to forty inclusive are substantially the same in form, the difference between them being in the dates, description of land, purchase price, time of payment, and the number of shares of stock in the irrigation companies. The applications declared on in counts forty-one to forty-nine inclusive, while relating to different parcels of land, and varying in dates, purchase price, time of payment, etc., are also substantially alike.

These several contracts and applications need not be separately noticed or considered. One class is represented and illustrated in the contract set out in the first count of the declaration, while the other is set out according to its legal effect in the forty-first count of the declaration. The contract declared on in the first count is as follows :

" This agreement made the eighth day of April, 1887, between Pomona Land and Water Company, a corporation duly organized under the laws of the State of California, and having its office and principal place of business in the town of Pomona, county of Los Angeles, State of California, party of the first part, and H. M. Loud of Oscoda, Michigan, party of the second part, witnesseth, that in pursuance of a resolution of its board of directors, adopted October 25, A.D. 1883, and in consideration of twenty-five hundred and thirty-nine dollars, paid by the party of the second part, the party of the first part does covenant and agree that after the making of the payments and full performance of the covenants

hereinafter expressed to be made and performed by the party of the second part, the party of the first part will, in consideration thereof, convey by deed of grant, bargain, and sale, to the party of the second part, his heirs or assigns, the following-described real property situated in the county of Los Angeles, State of California, to wit: Lot seventeen (17) of the northeast Pomona tract, according to the map of said tract duly recorded in book 5, page 461 of miscellaneous records of Los Angeles County, California, estimated to contain forty and .62 acres of land, together with 406.2 shares of stock of the Del Monte Irrigation Company, representing four and .062 inches of water under four-inch pressure, measured from centre of aperture, said stock to be delivered by the party of the first part and accepted by said party of the second part, subject to the by-laws of the said Del Monte Irrigation Company, when payment in full is made for the above-described land.

"The party of the first part reserves the exclusive right of way for laying pipes and aqueducts for conveyance of water; also the right to enter upon said lands and make necessary excavations for laying pipes and aqueducts, and to inspect, repair, replace, and control the same.

"And for and in consideration of the foregoing agreement, and as the purchase price of the above-described premises, the party of the second part do covenant and agree to pay to the party of the first part, its successors or assigns, the sum of ten thousand one hundred and fifty-five dollars, United States gold coin, to be paid in the following manner:

"$2539 on or before delivery of this contract,
        3808 on or before April 8, 1888,
        3808 on or before April 8, 1889,

and interest upon said respective sums from April 8, 1887, until paid, at the rate of eight per cent per annum, payable annually; and if not so paid, at option of said company, to be added to principal and bear like interest.

"And the party of the second part, in consideration that

the party of the first part does hereby agree that the party of the second part may at once enter upon, occupy, and enjoy the above-described premises, does further covenant and agree to pay and discharge all taxes, assessments, and water rates that may be levied or assessed during the pendency of this agreement, on the said described premises, and in default of the party of the second part doing so, the party of the first part may pay the same, and before the final payment of purchase money the party of the second part hereby expressly agrees to refund all amounts so paid, with interest from the date of such payment at the rate of one per cent per month.

"And the party of the second part further agrees that during the pendency of this agreement he will not commit or suffer any strip or waste of said premises, or of any improvements now existing or hereafter to be placed thereon; and if any default shall be made in any of the above payments for the space of sixty days after the same shall become due, then it shall be lawful for the party of the first part, its successors or assigns, at their option, to rescind this agreement to convey, to reënter upon, and to repossess said premises and all improvements existing thereon; removing the party of the second part and all claiming under him therefrom, and it is agreed that in such case all payments theretofore made shall be retained by the party of the first part as compensation and liquidated damages for the previous use, enjoyment, and occupation of the premises by the party of the second part. And it is hereby expressly covenanted and agreed between the parties hereto that this instrument is not and shall not be construed as a conveyance, equitable or otherwise, and that until the delivery of said final deed of conveyance or tender of all payments precedent thereto the party of the second part, his heirs or assigns, shall have no title, equitable or otherwise, to said premises.

"It is further expressly agreed that time is of the essence of this contract.

"In witness whereof, the party of the first part has caused its corporate name and seal to be subscribed and affixed by

its president and secretary thereunto duly authorized; and the party of the second part has hereunto set his hand and seal this third day of May, 1887. Executed in duplicate.

"POMONA LAND AND WATER COMPANY,

By H. A. PALMER, *President.*

"[Seal of the Company.]

"By F. L. PALMER, *Secretary.*

"H. M. LOUD. [L. S.]

"Sealed and delivered in the presence of —

"B. F. NICHOLS."

The applications are in the following form:

"*Application for Purchase.*

"POMONA, CAL., *April* 15*th,* 1887.

"Received from H. M. Loud seventy-five dollars deposit on application for purchase of northeast quarter (N. E. ¼) of lot twenty-two, (22,) containing ten (10) acres of land according to map of the San Antonio tract, duly recorded in book 3, p. 7, of map records of San Bernardino County, with usual water rights pertaining to said tract, at the price of fifteen hundred dollars and on the following terms; Seventy-five dollars cash deposit as above:

"First payment, $300.00, within sixty days from date; second payment, $562.50, on or before April 15th, 1888; third payment, $562.50, on or before April 15th, 1889; second and third payments to bear interest from date at the rate of eight per cent per annum, interest to be payable annually. In consideration of the premises I, H. M. Loud, hereby agree to purchase said property and pay for the same at the price and on the terms above set out; and in consideration that the Pomona Land and Water Company has withdrawn from the market the above-described land for sixty days, so that the said H. M. Loud may purchase the same at the above agreed on price in case the said H. M. Loud fails or refuses to make said first payment, as above, within the time above mentioned, then the deposit herein made shall be retained by the Pomona Land and Water Company as the estimated damages suffered

and the liquidated damages received by said company on account of the withdrawal of the land from the market as aforesaid. Time is hereby declared to be of the essence of the fulfilment of the obligation of the said H. M. Loud to purchase the above land under the terms and conditions above expressed. No title, legal or equitable, nor any right to the possession of the above-described land, shall inure to said H. M. Loud until the Pomona Land and Water Company shall have delivered an executed contract to him for the same.

> "H. M. Loud.              [SEAL.]
> "Thomas & Easton.         [SEAL.]
> "F. MacPherson, *Ag't.*

"Endorsed: Pomona, June 20th, 1887. Rec'd $300.00, being balance of first payment on the within application. Pomona Land and Water Company. F. L. Palmer, treas."

The ninth application for the purchase of lot eleven (11) of the northeast section of the Pomona tract differed from the rest in the fact that only part of the first payment was made.

The declaration, after alleging the refusal and failure of the defendant below to pay the respective sums due under the several contracts, averred that the plaintiff had been at all times, and was still ready and willing, upon the making of the payments in said contracts expressed to be made and performed by the said Henry M. Loud, to convey by deed of grant, bargain, and sale to the said Loud, his heirs or assigns, the property described in said contracts, together with the shares of stock of the respective irrigation companies referred to in the contracts. There was no averment in the declaration of any tender of a conveyance or conveyances of the lands or of the stock in the irrigation companies, nor of any tender of any conveyance or contracts referred to in the applications.

The record contains no plea on the part of the defendant below, but there was served upon the plaintiff's attorney a copy of the plea of the general issue, with notice of special matters of defence, which the parties have treated as a pleading by the defendant. The special matters of defence set out in the notice were in effect as follows: That if the contracts

were made they were obtained by fraud and were therefore void; that the use and value of the lands depends upon their proper irrigation by artificial means; that to induce defendant below to make the purchase of the lands the plaintiff represented that it had a good, clear title in fee to the lands; that it controlled and possessed water and water rights by means of shares of stock in the Del Monte, the Palomares Irrigation Companies, and the Irrigation Company of Pomona to furnish ample and sufficient water to fully and sufficiently irrigate said lands, so that each parcel of land should have water to irrigate the same; that the plaintiff below, knowing that defendant's only purpose in making the contracts was to resell the lands at a profit, represented that it had not and would not place any other lands upon the market for sale; that defendant relied upon these representations and statements, which proved to be false; that the plaintiff was insolvent and irresponsible; that it did not have a good title to the lands, but that they were heavily encumbered with mortgages, and therefore the defendant could not convey a good title to them; that the plaintiff land company did not possess or control sufficient water or water rights to fully and sufficiently irrigate the lands, and water sufficient to irrigate said lands was not represented by means of the stock in the irrigation companies named, and could not be furnished by said stock; that the supply of water furnished thereby was not and could not be continuous; that the irrigation companies had not sufficient supplies of water to furnish such water or to furnish it continuously or in the quantities called for by the contracts; that the irrigation companies were not responsible for furnishing such supply which was not brought on, or supplied, to said lands; that notwithstanding the agreement of the plaintiff below that it would not put other lands on the market, it at once, after the making of the contracts, placed large quantities of land on the market, and became such a strong competitor that the defendant was prevented from making a sale of said lands; that to some of the lands no water was brought, and to none was it brought in sufficient quantities to irrigate them; that he was a stranger in Cali-

fornia; that he hesitated to enter into the contracts because he was unfamiliar with the laws of the State and of the business methods in common use by the plaintiff, and did not know the risk or the extent of the liabilities he would incur; but that plaintiff induced him to make such contracts, representing that they were upon the common printed forms it had adopted, and that defendant would not be liable under the laws of the State beyond the amount he should pay upon the contracts, and the loss of the land in case of failure to make payments; that plaintiff only dealt in that manner in its land sales, and in no event would it hold, or seek to hold, the defendant to any personal liability beyond the amount paid; that defendant relied upon these representations in entering into the contracts, and that this suit was in violation of such representations and a fraud upon defendant.

As a further special defence the defendant set up "that the plaintiff did not, on the day when the last instalment of the purchase-price was made payable by the terms of said alleged contracts respectively, nor at any time, convey or tender a conveyance of the land or stock described in said contracts respectively, or in either or any of them, to this defendant."

Upon the trial of the cause the Circuit Court directed a verdict for the plaintiff for the various sums due and unpaid under the contracts, amounting with interest to $79,819.30. On motion for a new trial, heard before the Circuit Justice, (Mr. Justice Brewer,) and the District Judge, who tried the case, (Judge Brown,) it was ordered that judgment be entered on the verdict, but that execution should be stayed "until thirty days after the plaintiff had deposited with the clerk of the court for the benefit of the vendee all the deeds to the lands and certificates of stock, so that defendant may have an opportunity of examining the same to see if the titles are perfect, and the transfers of stock are made in accordance with the laws of the State of California."

In compliance with this order the plaintiff below deposited deeds for the land and certificates for the stock in the irrigation companies in accordance with the terms of the several contracts, but the defendant declined to accept the benefits of

the order or to receive the deeds and stock so deposited, and prosecuted the present writ of error to reverse the judgment of the court below.

*Mr. George F. Edmunds* and *Mr. Benton Hanchett* for plaintiff in error.

I. We contend that the intent of the contracts is that upon payments being made, and when they are made, the conveyance of the land and delivery of the stock will be made. The acts of payment and of conveyance and delivery of the stock are to be concurrent; the undertakings are dependent. The provision that the stock shall be delivered and accepted when payment in full is made for the land is decisive as to the time when the conveyance of land and the stock are to be made by the vendor. They are not to be made at some indefinite time, or some reasonable time after payment, but they are to be delivered when payment is made.

Under these provisions, in order for the plaintiff below to recover, in an action at law, the purchase-money, after the last payment became due, the plaintiff must aver and prove that on the date when the last payment became due, the plaintiff tendered to the defendant a conveyance of the land and shares of stock, and tendered the stock itself. *Bank of Columbia* v. *Hagner*, 1 Pet. 455; *Washington* v. *Ogden*, 1 Black, 450; *Hill* v. *Grigsby*, 35 California, 656; *Bohall* v. *Diller*, 41 California, 532; *Englander* v. *Rogers*, 41 California, 422; *Heim* v. *Treadwell*, 72 California, 217; *Johnson* v. *Wygant*, 11 Wend. 48; *Parker* v. *Parmele*, 20 Johns. 129; *S. C.* 11 Am. Dec. 253; *Kane* v. *Hood*, 13 Pick. 281; *Carman* v. *Pultz*, 21 N. Y. 547; *Berryhill* v. *Byington*, 10 Iowa, 223; *Wilson* v. *Nelson*, 75 Iowa, 710; *Goodwin* v. *Morey*, 111 Indiana, 68; *Ackley* v. *Richman*, 5 Halsted, (10 N. J. Law,) 304; *Egbert* v. *Chew*, 2 Green, (14 N. J. Law,) 447; *Shinn* v. *Roberts*, 1 Spencer, (20 N. J. Law,) 435; *S. C.* 43 Am. Dec. 636; *Biddle* v. *Coryell*, 3 Harrison, (18 N. J. Law,) 377; *S. C.* 38 Am. Dec. 521; *Headley* v. *Shaw*, 39 Illinois, 354; *Eddy* v. *Davis*, 116 N. Y. 247; *Beecher* v. *Conradt*, 13 N. Y. 108; *S. C.* 54 Am. Dec. 535.

While there has been great diversity in the decisions of the

courts upon the question whether, in cases of land contracts, the undertaking of the vendor to convey and of the vendee to pay were dependent or independent covenants, this court has laid down a rule which is simple, clear, and easy of application, in the case of *Bank of Columbia* v. *Hagner*, 1 Pet. 455. If it is adhered to by this court it forbids the plaintiff's recovery.

Each of the contracts provides that the plaintiff shall deliver stock in the irrigation company named in the contract, representing the amount of water at the rate of one inch for every one hundred shares of stock, measured from the centre of aperture, when payment is made in full for the land.

This stock is the title to be given to the defendant of the water right which he purchases, and is as much required as a conveyance of the property purchased as the deed is required as a conveyance.

It is insisted that the plaintiff cannot recover on any of these contracts without averment and proof of the tender of such stock on the day when the last payment became due. The authorities above cited are to this point.

II. There is no averment whatever of a tender, or readiness to deliver the stock itself in either of the irrigation companies. There is no proof of any tender or offer of such stock.

The stock to be delivered to the defendant is a particular stock described in the contract, which stock is to represent a certain amount of water measured in a certain way. It is contended that the declaration should aver the ability of the plaintiff to deliver such stock, as well as a tender of it, and that proofs should be made to sustain the averment in order to warrant a recovery. The defendant is not bound to accept a defective title. *Washington* v. *Ogden*, 1 Black, 450, at 456, 458; *Bank of Columbia* v. *Hagner*, 1 Pet. 455; *Swan* v. *Drury*, 22 Pick. 485; *Courtwright* v. *Deeds*, 37 Iowa, 503; *Burwell* v. *Jackson*, 9 N. Y. 535; *Eddy* v. *Davis*, 116 N. Y. 247; *James* v. *Burchell*, 82 N. Y. at 108.

By the articles of incorporation of the irrigation companies, the Pomona Land & Water Company may sell the whole of the water to whom it pleases, without reference to any lands

or any stock.· By by-law 9 the said company may sell the capital stock without reference to water.

The only provision which purports to connect the capital stock with water is by-law 9, which undertakes to limit the transfer of stock to the transfer of land, " on which the water represented by the stock is issued." *Provided,* that the company or stockholders may transfer their stock to the Pomona Land & Water Company, and it may transfer the stock without the transfer of land.

The right of transfer of capital stock in a corporation cannot be taken away, or limited by by-laws. *Anglo Cal. Bank* v. *Grangers' Bank,* 63 California, 359 ; *Driscoll* v. *West Bradley Mfg. Co.,* 59 N. Y. 96 ; *Bullard* v. *Bank,* 18 Wall. 589 ; *Bank* v. *Lanier,* 11 Wall. 369 ; *Kennebec & Portland Railroad* v. *Kendall,* 31 Maine, at 477 ; *Sargent* v. *Franklin Ins. Co.,* 8 Pick. 90 ; *S. C.* 19 Am. Dec. 306 ; *Taylor* v. *Griswold,* 2 Green, (14 N. J. Law,) 222 ; *S. C.* 27 Am. Dec. 33 ; *Farmers' Bank* v. *Wasson,* 48 Iowa, 336 ; *Pulford* v. *Fire Department of Detroit,* 31 Michigan, 458 ; *Morgan* v. *Struthers,* 131 U. S. 246.

This attempted limitation of the right to transfer being void, there is nothing which makes this stock different in its character from the capital stock of a gas company, a railroad company, or any other corporation, as representing property, or property rights. It does not and cannot represent any right to a specific amount of water, or any right to a quantity of water. Yet the plaintiff's contract is to deliver stock representing one inch of water for each one hundred shares of stock, measured from centre of aperture.

*Mr. Don M. Dickinson* and *Mr. Henry M. Duffield* for defendant in error.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

Many of the special matters set up by the defendant below were clearly irrelevant and unavailable as defences to the suit. Thus, the various matters of inducement for entering into contracts, and the alleged representations made by agents of the plaintiff prior to their execution, and the purpose of

the defendant in making the purchases with a view to the resale of the lands at a profit, together with his being a stranger in California, unacquainted with the laws of that State, the business methods in common use, or those used by the plaintiff; and his hesitancy about entering into the contracts; his want of knowledge as to the extent of the risk and liability he would incur thereby; and his reliance upon representations that he would not under such contracts, by the laws of the State, incur any liability beyond the amounts he should pay and the loss of the lands, were matters, which, if true, could constitute no answer to the suit upon the sealed contracts. The errors assigned to the action of the court in excluding testimony relating to these matters are not well taken. The deeds to Charles W. Brown and to other parties, antedating the contracts in suit, and having no connection with the lands covered thereby, offered for the purpose of showing what constituted water rights and water stocks; the representations of the plaintiff's agent as to title to the land and stock, made before the execution of the contracts; the defendant's lack of knowledge of the by-laws of the irrigation companies; the abandonment of the lands since 1888; the transcript of the patent of the United States of January 20, 1875, to Henry Dalton and others of the San José ranch, without an official seal attached and wanting a proper certificate from the presiding judge of the court, were incompetent to control the terms of the written contracts, or to show any defect in plaintiff's title.

The other matters set up and relied upon, so far as the same were material or available as defences to the suit, — such as fraud in obtaining the contracts from defendant, want of title in the plaintiff to the lands and stock in the irrigation companies representing water rights, — were not supported by proof. These irrelevant and unestablished matters of defence need not be further discussed.

The defendant presented twenty-seven requests to charge, the legal questions arising under which are embodied in the general proposition covered by the last special ground of defence that the plaintiff did not, when the last instalment

of the purchase money matured, nor at any time, convey or tender a conveyance of the land and stock described in the contracts in suit, respectively, or in either or any of them, to the defendant. This presents the real controverted question in the case, and its determination turns upon the point whether the covenants in the contracts are dependent or independent; that is to say, whether the covenant upon the part of the defendant below to pay the stipulated price for the lands purchased, or agreed to be purchased, is a condition precedent to the performance by the plaintiff of his covenant to convey such lands?

The contention of the plaintiff in error is that the covenants are dependent and concurrent, and that he is not bound to perform his agreement to pay the purchase price without a tender of performance on the part of the land company. On the contrary, the defendant in error insists, as held by the court below, that the covenants were independent, and the plaintiff in error is bound to pay the stipulated price as a condition precedent to its obligation to convey or tender any conveyance of the lands described.

If the acts to be performed by the land company and the purchaser, respectively, are dependent and concurrent, neither party would be entitled to an action against the other without the averment of performance, or the tender of performance, on his part. If, however, the payment of the purchase price for the lands is a condition precedent to the land company's covenant to convey, then it is entitled to enforce payment without conveyance or tender of conveyance, and the allegation of its readiness and willingness to convey, upon payment of the purchase money, was sufficient.

The question whether covenants are dependent or independent must be determined in each case upon the proper construction to be placed on the language employed by the parties to express their agreement. If the language is clear and unambiguous it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow

such construction. If parties think proper, they may agree that the right of one to maintain an action against another shall be conditional or dependent upon the plaintiff's performance of covenants entered into on his part. On the other hand, they may agree that the performance by one shall be a condition precedent to the performance by the other. The question in each case is, which intent is disclosed by the language employed in the contract?

In this case there is no ambiguity in the language of the contracts. The covenant and agreement of the land company is that "*after* the making of the payment and full performance of the covenants hereinafter to be made and performed by the party of the second part, (Loud,) the party of the first part (the land company) will, in consideration thereof, convey by deed of grant, bargain, and sale to the party of the second part, his heirs or assigns," the described lands, together with the designated shares in the irrigation companies. A subsequent clause of the contract provides that " this instrument is not and shall not be construed as a conveyance, equitable or otherwise, and until the delivery of the final deed of conveyance, or *tender of all payments precedent thereto*, the party of the second part, his heirs or assigns, shall have no title, equitable or otherwise, to said premises," and it is further provided that time is of the essence of the contract.

If these terms and provisions of the contracts are to be understood in their plain and obvious meaning, they clearly express the intention of the parties to be that the purchaser shall first pay the purchase price of the lands contracted for before he is entitled to demand a conveyance therefor. It is also clear that the purchaser (the defendant below) could not have legally demanded from the land company a deed or conveyance for the lands until after the purchase money had been fully paid. The payment or tender of payment of the purchase price for the land was a condition precedent to the right to the conveyance. The authorities, both in England and in this country, fully sustain this construction of the contract. A brief reference will be made to some of the principal cases on the subject.

In the learned note of Serjeant Williams to the early case of *Pordage* v. *Cole*, 1 Saund. 320 *a*, it is said that " if a day be appointed for payment of money, or part of it, or for doing any other act, and the day *is* to happen, or *may* happen, *before* the thing which is the consideration of the money, or other act, is to be performed, an action may be brought for the money or for not doing such other act *before* performance ; for it appears that the party relied upon his *remedy*, and did not intend to make *performance* a condition precedent ; and so it is where *no time* is fixed for performance of that which is the consideration of the money or other act."

In *Porter* v. *Shephard*, 6 T. R. 665, involving the right of a lessee to terminate the lease, it was held that the words "*from and after* payment of rent and performance of covenants," constituted a condition precedent.

In the subsequent case of *Grey* v. *Friar*, 4 H. L. C. 565, where the opinion of the judges was asked by the House of Lords as to whether a proviso constituted a condition precedent, the case of *Porter* v. *Shephard* was followed, and the proviso held to be a condition precedent.

In *Goldsborough* v. *Orr*, 8 Wheat. 217, it is said that where the acts are stipulated to be done at different times, the covenants are to be construed as independent of each other.

So, in *Goodwin* v. *Lynn*, 4 Wash. C. C. 714, the rule was laid down that to ascertain whether covenants are dependent or independent, the intention of the parties is to be sought for rather in the *order of time* in which the acts are to be done, than from the structure of the instruments.

In *Phillips' Constr. Co.* v. *Seymour*, 91 U. S. 646, 650, it was said by Mr. Justice Miller, speaking for the court, that " where a specified thing is to be done by one party as the consideration of the thing to be done by the other, it is undeniably the general rule that the covenants are mutual, and are dependent, if they are to be performed at the same time ; and if by the terms or the nature of the contract one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other. There

is no doubt that in this class of contracts, if a day is fixed for performance, the party whose duty it is to perform or tender performance first must do it on that day, or show his readiness and willingness to do it, or he cannot recover in an action at law for non-performance by the other party."

In many cases, both in England and in the United States, the rule of construction is adopted that an agreement to pay by instalments or at different times would make the covenants independent, since such an agreement manifests a willingness to rely on the covenants of the other contracting party for title or performance as the consideration for such payments. Also, where the acts stipulated to be done are to be done at different times, the covenants are generally construed to be independent of each other.

The land company's contention as to the proper construction of the contracts is supported by the following authorities, amongst others that might be cited: *Davis* v. *Heady*, 7 Blackford, (Ind.,) 261; *Gale* v. *Best*, 20 Wisconsin, 44; *Sayre* v. *Craig*, 4 Arkansas, 10; *Mayers* v. *Rogers*, 5 Arkansas, 417; *Hill* v. *Fisher*, 34 Maine, 143; and *Leftwich* v. *Coleman*, 3 How. (Miss.,) 167.

The cases of *Bank of Columbia* v. *Hagner*, 1 Pet. 455, and *Washington* v. *Ogden*, 1 Black, 450, are not in conflict with the foregoing decisions and the propositions they announce. The stipulations of the contract in the former case were not similar to those in the case under consideration, while in *Washington* v. *Ogden* the agreement was expressly made dependent on the surrender and cancellation of a previous contract, made by the plaintiff for the sale of the same lands to a third party, without which surrender the vendor could not give a good title.

Neither do the cases of *Hill* v. *Grigsby*, 35 California, 656, 658, and *Bohall* v. *Diller*, 41 California, 532, cited on behalf of the plaintiff in error, control the present case. In *Hill* v. *Grigsby* the instrument provided that the plaintiff should convey " *as soon as* " the purchase money was paid. In *Bohall* v. *Diller* the terms of the contract were that the plaintiff, "upon payment of the purchase money, was to convey."

These stipulations were properly held to be dependent covenants, and that neither party could sue without performing, or an offer to perform, on its part. But in the case at bar the terms of the contract contain no stipulation that the covenants of the respective parties are to be performed at the same time or concurrently. On the contrary, the clearly expressed intention was that the payment of the purchase price of the lands should precede the performance of the land company's covenant to convey the lands and water stocks. The consideration to be paid covered both the lands and the stocks, and its payment was a condition precedent to a transfer of either, or both. The provision that the stock was to be delivered by the land company and accepted by the purchaser, (subject to the by-laws of the irrigation companies,) "when payment in full is made for the above-described land," in no way changes the proper construction of the contracts, or establishes that the stock was to be transferred concurrently with the payment for the lands. The expression, "when payment in full is made for the above-described land," confirms the construction that the payment was a condition precedent to the conveyance of either stock or land, or both. The purchaser had no right to a transfer of the stock before he became entitled to a conveyance of the land.

We cannot accede to the contention of the plaintiff in error that the contracts should be so construed as to make payment of the first instalment of purchase money a condition precedent to the covenant to convey, but that the last instalment of purchase money should be treated as dependent or concurrent with the covenant to convey. The covenants are to be interpreted as of the date of the execution of the contract, and as applying to each and all the instalments of purchase money alike. Covenants like those in the case under consideration are not of a shifting character, independent at one time and dependent at another, or independent as to one or more instalments of purchase money and dependent in respect to others, unless there is a clearly expressed intention on the part of the contracting parties that such should be the case. No such intention is either expressed or implied in the language of the

contracts in suit. The payment of all the instalments of purchase money is a condition precedent to the performance of the land company's covenant to convey.

In respect to the nine applications for purchase declared in counts forty-one to forty-nine, inclusive, of the declaration, while the terms are not so clearly expressed as in the twenty contracts already considered, it is fairly implied that the instalments of purchase-money were to be paid before the land company was under any obligation to convey.

The forty-ninth count, based upon the application to purchase lot 11, does not stand upon any different principle from the rest. It is true that the purchaser did not pay the first instalment in full, but the land company had the right to accept the partial payment, and treat the contract as a subsisting one; and it was so treated by Loud, who took possession of the lot, and exercised acts of ownership over it up to 1888 at least. Under these circumstances he is not in a position to claim that the contract was terminated because of his own failure to pay the first instalment in full.

It is earnestly urged on behalf of the plaintiff in error that the contracts declared upon required the land company to deliver stock in the irrigation companies, which should represent and convey title to water or water rights to the extent of one inch of water under four-inch pressure, measured from centre of aperture, for each one hundred shares of stock. In other words, that the purchaser's contracts entitled him to water rights as distinguished from stock in the irrigation companies, by means of which water could be procured in the quantity designated. This position cannot be sustained, for the contracts by their express terms stipulated for the transfer of stock in the designated irrigation companies, which stock was to be delivered and accepted subject to the by-laws of such companies. The statement that this stock represented so many inches of water, under a certain pressure, were words of description as to the quantity of water which the irrigation company would undertake to furnish to the owner of the designated shares of stock.

It is urged that the stock which the land company had

transferred to Loud, and produced for his acceptance at the trial, was not shown to have been fully paid up. This objection is not well taken. It appears by the testimony of the secretary of the land company that the land company delivered water until February, 1887 — before the organization of the irrigation companies. It is further shown that the land company had numerous artesian wells, pipe lines, flumes, and ditches from which water supplies were furnished for irrigating purposes; and it further appears that these wells, water facilities, pipe lines, etc., were transferred by the land company to the several irrigation companies, which, in consideration thereof, delivered fully paid up stock to the land company, or to a trustee for its benefit. Certificates of this stock were, under proper directions of the officers of the land company, made out in the name of Loud, and produced and tendered at the trial. There is no evidence showing that the consideration given by the land company for the shares of stock in the irrigation companies was in any way inadequate, so as to impair its right and title thereto as fully paid up stock.

It is further said on behalf of the plaintiff in error that the stock proposed to be transferred to him gave no special rights or privileges, and constituted no easement to the lands purchased. This is, however, a mistake. In the articles of association of each of the irrigation companies, which were put in evidence, it is declared : "That the purpose for which this corporation is formed is to acquire water, water rights, flumes, ditches, aqueducts, reservoirs, and other property that may be necessary or convenient for the supplying of water to such person or persons or their assigns in the counties of Los Angeles and San Bernardino, State of California, to whom the Pomona Land and Water Company has sold water rights, or to whom it may hereafter sell water rights or to whom it may transfer water stock of this corporation, but to no other person or persons whomsoever."

In addition to this provision in the charters of the irrigation companies, it is provided by § 552, Deering's Anno. Stats. and Code of California, relating to the right to water, to irrigate lands sold by water or irrigating companies, that " whenever

any corporation organized under the laws of this State furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law."

Those provisions are recognized and sustained by the courts of California in *McFadden* v. *County of Los Angeles*, 74 California, 571, and *Applegarth* v. *McQuiddy*, 77 California, 408.

It is shown that the defendant in error had the requisite amount of stock in the irrigation companies to perform its contracts with the plaintiff in error, and the land company offered to prove, as a matter of fact, that the stipulated quantity of water was attached to the lands by the stock in the irrigation companies, but this offer was withdrawn on the objection of the defendant below that it was immaterial. The proper construction of the contracts was that the defendant in error was to deliver stock in the designated irrigation companies which would attach to the land and entitle the purchaser to the quantity of water represented by the stock, and the stock which the land company thus held and proposed to transfer was clearly within the terms of the contract.

There are other points of minor importance presented on behalf of the plaintiff in error, but the controlling question in the case turns upon the character of the covenants contained in the contracts, and in the view we have taken of that matter the defendant in error had the right to enforce the payment of the purchase money for the lands agreed to be purchased without first having conveyed or tendered a conveyance of the lands purchased. This question of law, depending upon the proper construction of the contracts, was not affected by any evidence, either introduced or offered.

Our conclusion is that there is no error in the judgment of the court below, and it is accordingly

*Affirmed.*