# LITTLEPAGE v. NEALE PUBLISHING COMPANY.

### CONTRACTS; CONSIDERATION.

1. Where a supplemental contract provides that the original contract between the parties is changed by the supplemental contract only as specifically stated therein, every provision of the original contract is to be given force and effect unless plainly inconsistent with the provisions of the supplemental contract.

2. A promise to do a thing which the promisor is already bound to do is not a good consideration upon which to found another promise.

3. While parties *sui juris* may contract as they will, and, in the absence of fraud, courts will not relieve them, there must always be a consideration for the promise upon which a recovery is sought; and where it appears that the party drawing a contract sought to take undue advantage of the other party, no presumptions will be indulged in his favor.

4. Where a publisher agrees with an author to publish his book upon receiving 350 subscriptions at $2.50 per copy, and the author agrees to furnish the names and addresses of probable purchasers, and does so, and by a supplemental agreement the author agrees to pay the publisher $437.50 within ten days, which sum the publisher agrees to repay when 350 copies of the book shall have been sold at $2.50 per copy, and nothing is done by the publisher in the way of publishing the book, the agreement by the author to pay the sum mentioned is without consideration, and cannot, therefore, be enforced.

No. 2020.   Submitted December 7, 1909.   Decided January 4, 1910.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia upon verdict in an action of assumpsit.                                    *Reversed.*

The facts are stated in the opinion.

*Mr. Holmes Conrad* for the appellant.

*Mr. William F. Woodard* and *Mr. A. A. Birney* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a judgment of the supreme court of the District upon a verdict in favor of the appellee, the Neale Publishing Company, a corporation, plaintiff below, in the sum of $437.50.

On January 15th, 1907, the parties to this suit entered into a contract providing, in part, as follows:

"I. Said party of the first part (the Neale Publishing Company) agrees to publish in book form certain manuscript entitled, "The Career of the Merrimac-Virginia," of which said

party of the second part (Captain H. B. Littlepage) is the author and proprietor, provided said party of the first part shall receive three hundred fifty (350) bona fide subscriptions to said publication from responsible subscribers at two dollars fifty cents ($2.50) each copy, within three months from the date of this contract, and, in the event that said first party receives said subscriptions within said three months, said party of the first part agrees to have said publication ready for delivery to said subscribers and all other purchasers of said publication, within three months from the time that said company shall have received said subscriptions.

"Said party of the first part, although not incumbent upon it so to do, will advertise, at its discretion, the said book, the extent, scope, and character thereof to be entirely in the right of the said party of the first part. * * *

"Said party of the second part agrees that said party of the first part does not guarantee the sale of said publication, and it is thoroughly understood by the parties hereto that the sale of said book cannot be determined in advance of its publication. * * *

"Said party of the second part agrees to supply to said party of the first part the names and addresses of those deemed by him to be probable purchasers of said publication.

"Said party of the second part agrees that all property rights in said publication shall be and hereby are vested in said party of the first part, subject to the rights of said party of the second part under this contract, that said party of the first part shall take out the copyright in said publication in its name as its property, any copyright in said publication to be subject to the right of said party of the second part to receive his said royalties as provided in this contract."

On April 2d, 1907, this contract was supplemented by the following:

"It is agreed between the Neale Publishing Company and Captain H. B. Littlepage that the contract between them, which bears date of January 15th, 1907, and which concerns the pub-

lication of "The Career of the Merrimac-Virginia," be changed in this respect only, to wit:

"Said Littlepage shall pay to said company four hundred thirty-seven dollars and fifty cents ($437.50) within ten days from the date of this writing.

"Said the Neale Publishing Company agrees to pay to said Littlepage four hundred thirty-seven dollars and fifty cents ($437.50) as soon as said company shall have sold and been paid for three hundred and fifty (350) copies of said book at two dollars and fifty cents each.

"Said the Neale Publishing Company agrees to have said book ready for delivery to purchasers within three months from the time that said Littlepage makes said payment to said company, and will use its reasonable efforts to have said book ready at an earlier date."

Subsequent to the signing of the original contract the defendant, Littlepage, furnished to the plaintiff rosters of the Army and Navy and "the names of several hundred individual subscribers." He did not, however, pay the company the $437.-50 mentioned in the supplemental agreement, but, on the contrary, on May 1st, 1907, demanded the return of his manuscript, which was refused. Thereupon the plaintiff, without doing anything towards the publication of the book, brought this action in three counts. In the first count it is stated that the defendant, by the terms of the original and supplemental agreement, "undertook and promised to pay the plaintiff the sum of $437.50 within ten days from the second day of April, 1907, upon the consideration that the said plaintiff company would publish and have ready for delivery within three months from the said last-mentioned date a certain book entitled, 'The Career of the Merrimac-Virginia,' the manuscript of which was written by the said defendant, and the said plaintiff, upon its part, has been ever ready and willing to publish the book aforesaid, in strict accordance with the terms of the contract between the parties."

In the second count reference is made to the original contract, which, the count avers, was entered into "upon the pro-

vision that the said defendant should secure for the said plaintiff, 350 bona fide subscriptions to the said publication within three months from the date of the contract aforesaid," and it is then averred that the plaintiff, "having failed to receive the number of subscriptions provided to be obtained in the contract aforesaid, entered into a supplemental contract with the said defendant, whereby and by the terms of which, and as a condition precedent to the publication of the book aforesaid by the plaintiff company, the said defendant undertook, promised, and agreed to pay to the said plaintiff within ten days from the date of said supplemental contract, to wit, within ten days from the second day of April, 1907, the sum of $437.50, and the plaintiff company, in consideration thereof, agreed to publish the said book, and have the same ready for delivery to purchasers, within three months from the date of the payment of the said $437.50." The third count is the common counts in assumpsit.

The first assignment of error is based upon the proposition that the contract of January 15th does not support the second count of the declaration; in other words, on the ground of variance.

In the second assignment of error it is contended that the promise in the supplemental agreement to pay the sum sued for was without consideration. We will consider these assignments in inverse order. It is manifest that the question last raised involves an interpretation of the original and supplemental contracts, for the former is changed by the latter "only" as specifically stated therein. Every provision, therefore, in the original contract is to be given force and effect unless plainly inconsistent with the provisions of the supplemental contract, which we will first consider. Littlepage therein promised to pay the plaintiff $437.50 within ten days. Plaintiff then agreed to refund or repay that amount as soon as 350 copies of the book had been sold and paid for at $2.50 each. Plaintiff further agreed "to have said book ready for delivery to purchasers, within three months" from the time of said payment by Littlepage. It will be noted that Littlepage

in effect, was to advance the sum stated, and that in consideration thereof the plaintiff was to have the book ready for delivery *"to purchasers"* within three months. There is nothing in this supplemental contract requiring the plaintiff to make any effort to obtain purchasers. Neither does it require Littlepage to do so. We must therefore look to the original contract to determine this question. In that contract the company agrees to publish the book, provided it "shall receive 350 bona fide subscriptions from responsible subscribers at $2.50 each copy, within three months from the date of this contract," in which event the company "agrees to have said publication ready for delivery *to said subscribers and all other purchasers* of said publication, within three months," etc. The company also agrees, "although not incumbent upon it so to do," that it "will advertise at its discretion the said book." It is further agreed that the company "does not guarantee the sale of said publication." The contract further provides that Littlepage shall supply to the company "the names and addresses of those deemed by him to be probable purchasers of said publication." From this review of the original contract it is apparent that neither party was bound thereby to obtain, or to endeavor to obtain, subscriptions. It is clear, however, that in the event 350 subscriptions were obtained, the company was legally bound to publish the book. The undisputed evidence is that, prior to the signing of the supplemental agreement, Littlepage furnished to the company rosters of the Army and Navy and the names of several hundred individual subscribers. He had, therefore, fully performed the obligation resting upon him under said original agreement. When, therefore, the supplemental agreement was entered into, the company was under obligation to publish the book provided 350 subscriptions were received during the time stated. Does it promise anything more in the supplemental agreement? It binds itself to have the book ready for delivery *"to purchasers,"* within three months. But who is to obtain the purchasers and how many must be obtained before publication? There certainly is nothing in this supplemental agreement to indicate. The provision therein, that

the sum to be advanced by Littlepage will be refunded "as soon as said company shall have sold and been paid for three hundred and fifty (350) copies of said book," etc., standing alone, might be read as binding the company to use its best endeavors to obtain subscriptions, but this provision must be read in the light of other provisions in both the original and supplemental agreements, and, when so read, simply means that, when three hundred and fifty books, the property of the company, have been sold and paid for, the refund will be made. The original contract, as we have seen, does not bind the company to obtain a single subscription. When, therefore, Littlepage agreed to pay the company $350 it agreed to nothing in return which it was not already bound to do, except that it promised to refund the money upon conditions which it was in no way bound to bring about. In other words, Littlepage was to pay the company a stated sum, whereupon the company could complacently await the receipt of 350 subscriptions before publishing the book. As we construe this supplemental contract there is absolutely no consideration for the payment of the sum stated therein.

Much has been said about dependent and independent contracts, and the rule announced in *Loud* v. *Pomona Land & Water Co.* 153 U. S. 564, 38 L. ed. 822, 14 Sup. Ct. Rep. 928, has been sought to be made applicable to this case. In that case it was held that the payment or tender of payment of the purchase price of land was a condition precedent to the right to the conveyance, but the land was in existence, and, upon payment, conveyance could have been immediately enforced. Indeed the decree appealed from and affirmed by the Supreme Court required that execution should be stayed "until thirty days after the plaintiff had deposited with the clerk of the court, for the benefit of the vendee, all the deeds to the lands and certificates of stock, so that defendant may have an opportunity of examining the same to see if the titles are perfect and the transfers of stock are made in accordance with the laws of the state of California." It requires no argument to demonstrate the difference between that case and this. The plaintiff, upon receipt of the purchase price, agreed ab-

solutely to vest title in the defendant, and the court, as we have seen, was very careful to protect the defendant in this respect; here the plaintiff agreed, in effect, to publish the book upon the happening of an event which it was not bound to bring about, and, upon the happening of which, the original contract required such publication. It of course goes without saying that the promise to do a thing which the promisor is already bound to do is not a good consideration upon which to found another promise. Wald's Pollock, Contr. 184; *Warren v. Hodge,* 121 Mass. 106.

The record fails to disclose that any expense under said contract was incurred by the plaintiff previous to the bringing of the suit. The right to recover is therefore based solely upon the naked promise of the defendant in said supplemental contract. It may be conceded that parties *sui juris* are at liberty to contract as they will, and that, in the absence of fraud, courts of justice will not relieve them; but this concession is subject always to the condition that there shall be a consideration for the promises upon which a recovery is sought, and where, as in this case, the contract is drawn by one party and it is apparent that an undue advantage is sought to be obtained over the other party, no presumptions ought to be indulged in favor of the party drawing the contract. This is a familiar and well-recognized rule of construction.

The view we have taken of the second assignment of error renders it unnecessary to consider the first.

It is apparent from the foregoing that the judgment must be reversed, with costs, and cause remanded for further proceedings, and it is so ordered.                    *Reversed.*