OLD FARMERS OIL CO., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2824. Promulgated May 29, 1928.

*Luke B. Garvin, C. P. A.*, and *George S. Atkinson, Esq.*, for the petitioner.

*Bruce A. Low, Esq.*, for the respondent.

204

208

210

OPINION.

MILLIKEN: There is no merit in the plea of the statute of limitations. Petitioner filed its return for 1919 on March 10, 1920; respondent mailed the deficiency letter involved in this proceeding on February 6, 1925, and petitioner filed its petition with the Board on March 26, 1925. The five year period within which assessment can be made, provided in section 277(a)(2) of the Revenue Act of 1924, is extended by subdivision (b) of the same section. This subdivision provides:

(b) The period within which an assessment is required to be made by subdivision (a) of this section in respect of any deficiency shall be extended (1) by 60 days if a notice of such deficiency has been mailed to the taxpayer under subdivision (a) of section 274 and no appeal has been filed with the Board of Tax Appeals, or, (2) if an appeal has been filed, then by the number of days between the date of the mailing of such notice and the date of the final decision by the Board.

This proceeding falls within the above provision. See also section 277 (b) of the Revenue Act of 1926. Since assessment is not barred,

neither is collection barred. *Art Metal Works*, 9 B. T. A. 491, section 278(d) Revenue Act of 1926.

Petitioner insists that respondent's predecessor in office, with all the facts before him, determined the tax due; that this determination was final and that respondent does not possess the authority to review the act of his predecessor and again determine the tax. It is by no means clear that respondent's predecessor had all the facts before him when he wrote the letter of April 28, 1921; neither is it certain that such predecessor determined the tax, since the assessment list of June, 1921, was signed by respondent, who took the oath of office and assumed his duties prior to that date. Petitioner also filed a claim in abatement on July 22, 1921, for the whole of the assessment made by the respondent on July 13, 1921, thus reopening the entire matter. Waiving these considerations, it appears that all such predecessor did was to determine whether the contract of January 10, 1919, between petitioner and Globe Oil Co. constituted a closed transaction; that is, whether the amounts received under that contract by petitioner during the year 1919 were taxable as income received during that year. This was a pure question of law. Since an erroneous decision on a question of law by an officer of the Government is not binding on his successor in office (*Yokohama Ki-Ito Kwaisha, Ltd.*, 5 B. T. A. 1248, *Estate of W. S. Tyler*, 9 B. T. A. 255), this issue must be resolved in favor of respondent.

This brings us to the vital issue in this case, which is, whether the contract of January 10, 1919, the execution of the deed, the filing of these papers in escrow and what was done under this contract and this deed, constituted a closed transaction in the year 1919. Under the contract, Globe Oil Co. was not only at once placed in possession of the property, but it acquired the ownership of all oil which had been produced from and including the 16th day of the preceding December. The purchaser paid the cash installment of $100,000 and promised to pay the remaining installments when due. This promise was qualified by but one limitation and that was the provision with reference to the marketing of the oil. Subject to this limitation, petitioner had the right on each due date to enforce payment of each installment. Cf. *Loud v. Pomona Land & Water Co.*, 153 U. S. 564. The provision as to the marketing of the oil can have no more effect on the nature of this transaction than if it had been contained in a deed which had been duly delivered. This right to enforce the collection of each installment when due differentiates this proceeding from *North Texas Lumber Co.*, 7 B. T. A. 1193, and *R. M. Waggoner*, 9 B. T. A. 629. After the execution and delivery of the contract and the execution and delivery of the deed to the bank in escrow, petitioner had nothing further to do except receive the payments when due. If all payments had

been made as provided in the contract, the deed would have been delivered to the purchaser by the bank and not by petitioner. Petitioner's assent to the delivery of the deed was not required. Under these facts, we are clearly of opinion that the income from this transaction was taxable when received by petitioner. See *D. M. Stevenson*, 9 B. T. A. 552.

Petitioner next contends that if it be held that this was a closed transaction in 1919, it was also a closed transaction in 1918. This contention, in our opinion, is not tenable. Burk was not placed in possession. Petitioner had no right to enforce the collection of the deferred payments. Further, it does not appear that Burk paid the $30,000 which was due December 27, 1918, the failure to pay which operated as a forfeiture of the contract. Besides, the contract of January 10, 1919, differed in many particulars from the contract with Burk. The Burk contract called for notes and the second contract did not. The deferred payments differed in amount. The Burk contract called for the delivery of a deed which was to contain a provision for a vendor's lien. The deed executed January 10, 1919, did not provide for such a lien but the contract of that date did provide that the deed should be placed in escrow. The first contract was an agreement to sell and to vest possession on date of sale. The second was a contract of sale which vested immediate possession in the vendee. Cf. *Sophia M. Garretson*, 10 B. T. A. 1381.

The next issue is what amount of taxable income petitioner received during the calendar year 1919 on account of the sale of January 10 of that year. Petitioner admits, and it is true, that the sale was not made on the installment plan, and, therefore, is not taxable under the provisions of sections 212(d) and 1208 of the Revenue Act of 1926.

Respondent, in his amended answer, alleged that the deferred payments were worth their face value of $350,000 and the burden rests upon him to sustain this affirmative allegation. This burden he has failed to meet, since he introduced no evidence whatever on this issue. The question remains, Were the deferred payments the equivalent of cash? If so, petitioner is taxable thereon to the extent of their cash value even though such payments were not represented by notes. See *C. L. Starr*, 9 B. T. A. 886. Respondent, in the brief filed in his behalf, states:

"Accordingly, it is submitted that respondent's determination that the obligations of the vendee had a fair market value of $148,187.39 at the time they were received by petitioner, must be approved."

We find nothing in the record which bears out this statement. Respondent's deficiency letter expressly states that so much of the income included in the deficiency as arose from the sale to Globe Oil Co. consisted of " Payments on contract forfeited by Globe Oil Com-

pany" and "It appears, therefore, that the sale occurred in 1919 and the payments received are treated as income for that year." It was only "payments" that respondent included in gross income. By no stretch of the imagination can the inclusion of payments be twisted into a valuation of unpaid installments. Although it is evident that respondent included in gross income only payments, it is apparent that he erred in determining the amount of such payments and also in determining the year in which a part of these payments should be taxed. Petitioner was on a cash receipts and disbursements basis and was taxable in the year 1919 only on the amount of such payments as it received in that year. The facts with reference to the amounts received by petitioner by reason of a sale to Globe Oil Co. and the dates of such receipt were stipulated and the stipulation shows that petitioner received in the year 1919 the cash payment of $100,000, and partial payments on the installments amounting to $33,451.26, making the whole amount received by petitioner in 1919, $133,451.26. In the succeeding year, 1920, it received from the sheriff $14,736.13. The total amount received by petitioner in both years was $148,187.39. The deficiency letter shows that respondent computed the amount of payments received as $248.187.39 and included in gross income as forfeited payments the cash payment of $100,000 and the further sum of $148,187.39, which latter amount is precisely the equivalent of what petitioner received in both 1919 and 1920, and which was all that it received by reason of the sale. In other words, respondent has included the cash payment of $100,000 twice and has added to the payments received in 1919, the payment of $14,736.13 which was received in 1920. If respondent's theory in conformity with the deficiency letter had been correctly applied the gross income which petitioner received in 1919 would amount to $133,451.26.

Respondent has computed the deficiency on the basis of payments received and now attempts to change his position by asserting that all unpaid installments were worth their face value. This as we have pointed out he has failed to prove. Neither has he attempted to prove that such installments had a cash value of any amount. It is evident that the unpaid installments were not the equivalent of cash. The fact that instead of delivering the deed as required by the Burk contract it was placed in escrow, evidences a fear that the vendee might be unable to meet its obligations when due and further evidence of this fear is shown by the provision which extended the time of payments of the installments if the oil was not marketed. The unpaid installments were not secured by a lien on the property sold, the only security being that the deed was in escrow. The deed could not be withdrawn by petitioner so long as the vendee complied with its agreement. The result of this is that a sale of the contract would carry with it no legal title to the security. The security could be

transferred only by the execution of another and conditional deed to the assignee of the installments. The record shows that the vendee paid in 1919 only $33,451.26 on installments falling due in that year, which totaled $150,000, and that petitioner in the latter part of that year instructed its attorneys to proceed to recover possession. Neither the contract nor the deed contained forfeiture or precipitating conditions. We are of opinion that the unpaid installments were not the equivalent of cash. We therefore find that the total amount of gross income received by petitioner in 1919 from the vendee was $133,451.26 instead of $248,187.39 as found by respondent.

In order to ascertain the net income from this sale, the cost of the properties sold to petitioner should be deducted from the gross sale price. It was stipulated at the hearing that the total cost of such properties less proper allowances for depletion and depreciation was $71,214.68, all of which was expended in the year 1918. Respondent urges that since this amount includes $54,491.71, which was the cost of drilling oil wells, and since petitioner deducted this latter amount as ordinary and necessary expenses from its gross income for the year 1918, it is now precluded from asserting that this amount was part of the cost of the property sold in 1919 and cites article 223 of Regulations 45. This article in part provides:

Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines, and development of the property may at the option of the taxpayer be deducted as an operating expense or charged to the capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. * * * An election once made under this option will control the taxpayer's returns for all subsequent years. * * *

Before discussing this regulation, it is expedient to point out that what is properly a capital investment is not and can not be an ordinary and necessary expense and that the reverse is equally true. The Revenue Act of 1918 conferred no authority on the Commissioner to arbitrarily determine by regulation or otherwise that a purely capital item was a business expense. Compare *Union Metal Manufacturing Co.*, 1 B. T. A. 395; *Union Collieries Co.*, 3 B. T. A. 540; *Boyne City Lumber Co.*, 7 B. T. A. 36. Much less could he authorize a taxpayer to elect whether he will deduct from gross income an expenditure made for a purely capital purpose as an ordinary and necessary expense. Whether the provision of the regulation which permits a taxpayer to elect whether he will deduct or charge to capital account, " Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with * * * drilling of wells * * * " is a proper exercise by the Commissioner of his

authority to make regulations is not before us. Petitioner made no such expenditures. What he did was to contract with third persons for completed wells and pay such persons the stipulated price therefor. By these contracts, petitioner received assets which were just as much capital assets as structures erected above ground. The payment for wells when completed bears no resemblance to payments for wages, fuel, repairs, hauling, etc. Payments for such items may be in the nature of ordinary and necessary expenses, but payments for completed wells are payments for capital assets. This is the construction which respondent has placed on his own regulation. (A. R. R. 1147, Cumulative Bulletin I–2, p. 140.) Such wells had useful lives and their value may be returned to the taxpayer through deductions for wear and tear and exhaustion. See *Consolidated Mutual Oil Co.*, 2 B. T. A. 1067. We are of opinion that the moneys expended by petitioner in 1918 for the acquisition of oil wells was a capital investment which should be included in the cost of the property sold. See *Seletha O. Thompson*, 9 B. T. A. 1342, and *Consolidated Mutual Oil Co.*, supra.

The fact that petitioner sought to deduct in his return for 1918 these expenditures as business expenses does not preclude it from asserting that the cost of these wells was a part of the cost of the property sold in 1919 any more than his return of the profit arising from this transaction as income for the year 1920 precludes him from being taxed on part of that income for the year 1919. The only question for our decision is whether under the provisions of the Revenue Act of 1918 the amounts thus expended were deductible in 1918 or constituted a part of the cost of the property sold. We are of opinion that they constituted a part of the cost of the property sold.

Petitioner is entitled to recover its capital investment of $71,214.68 before it can be said to be in receipt of income. *Anton M. Meyer*, 3 B. T. A. 1329; *C. L. Starr*, supra.

Respondent in the brief filed in his behalf vigorously contends that petitioner is not entitled to the benefit of section 337 of the Revenue Act of 1918 because the evidence is not sufficient to prove that the principal value of the property sold had been demonstrated by exploration and discovery work. In making this contention, he overlooks the obvious fact that in his answer he admits all the facts alleged in the petition with respect to this contention. We are of the opinion that the facts of this case bring this transaction within the provisions of section 337 and that petitioner is entitled to the benefits of that section.

Petitioner's contention that it should be allowed as a credit on its taxes for 1919, so much of its taxes paid on its income for 1920, as

pertained to the profits on the sale made in 1919 must be denied. The credit, if any, in such a contingency is not a matter over which the Board has jurisdiction. Petitioner's remedy is to secure a refund.

Petitioner averred that the respondent had not allowed a deduction for depletion. We have carefully considered the evidence and from the same are unable to conclude that the respondent erred in this respect. We have found as a fact the correct unit rate for depletion, the amount claimed for the year 1918 and allowed for the year 1919. Petitioner's contention is based on the proposition as we understand it that oil was produced in 1918 and sold in 1919 on which no allowance for depletion has been granted. We do not doubt that petitioner, being on a cash receipts and disbursements basis, is entitled to an allowance in 1919 for all oil sold in that year, but we are unable to determine that such allowance has not been granted by the respondent. We have no positive proof upon which to base a decision concerning this assignment of error.

*Judgment will be entered under Rule 50.*