## THOMPSON v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Third Circuit.
September 24, 1928.

No. 3784.

S. Leo Ruslander, of Pittsburgh, Pa. (A. E. James, of Washington, D. C., and Geo. K. Warn, of Pittsburgh, Pa., of counsel), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., and John Vaughan Groner, Sp. Asst. Atty. Gen. (C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and V. J. Heffernan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decision of the United States Board of Tax Appeals, holding that $58,700, proceeds of the sale of certain ownership certificates, received by the petitioner and his associates, was income, and so taxable, and not capital contributions.

Some time prior to 1920 an oil well had been drilled in or near Pittsburgh through a stratum of sand called the Speechley sand. It produced an unusually large quantity of oil. This created an oil fever in and about that community. In 1920, the petitioner and three associates formed a partnership, under the firm name of the Fern Hollow Gas & Oil Company, for the purpose of acquiring a certain 4-acre tract of land situate in Nine Mile Run hollow, Fourteenth ward, Pittsburgh, Pa., and drilling wells thereon in search of oil and gas. In order to raise the necessary capital, they issued and sold ownership certificates at $100 each to persons who were willing to enter into the enterprise. Six hundred of these certificates were issued, 578 being sold to others, and 22 retained for themselves. The following is a copy of the certificates:

"In consideration of the sum of $100, to it in hand paid, the Fern Hollow Gas & Oil Company, of Braddock, Pa., a partnership composed of R. E. Thompson, Clark W. Kelly, Ralph J. Brown, and Miner E. Temple, does hereby sell, assign, transfer, and set over unto ———, heirs and assigns, the one six-hundreth (1/600th) part of the net earnings derived from the production—less the company's one-eighth (1/8th) royalty—of any oil or gas which may be found in paying quantities in the two wells to be drilled by the company, through the Speechley sand on a four-acre tract of land situate in Nine Mile Run hollow, Fourteenth ward, city of Pittsburgh, Pa., unless oil or gas is found in paying quantities at a lesser depth."

The tract was purchased and two wells were drilled. At first these wells produced some gas, but they ran out and soon became unproductive. Oil and gas were not found as was expected, and so in 1924 the entire property was disposed of and the partnership liquidated. The amount received from all sources by the partnership, over and above the disbursements from 1920 to 1924, was $8,373.58. There is no dispute about any of the figures; nor is there any question as to the good faith of the petitioner and his associates.

One of the partners, the late Ralph J. Brown, Esq., acted as attorney of the partnership and filed its income tax return for 1920. It treated the receipts from the ownership certificates as income. Upon an audit of the return by the Commissioner of Internal Revenue, certain disallowances were made, and a deficiency tax was assessed for that year against the petitioner, who appealed to the United States Board of Tax Appeals. The Commissioner contended there, and contends here, that the $57,800 received from the sale of the certificates was income, and not capital. If this amount is income, the assessment should be sustained; but, if it is capital, the decision of the board should be reversed, provided the question is properly before us.

The Commissioner says that the petitioner's contention cannot be urged in this court because the case was presented to the board on a contrary theory. He further says that the contention that this money was capital was suggested in the original petition, without specific knowledge of the facts involved, and was not mentioned in the supplemental petition, filed when the petitioner had ascertained the facts, and so it was not passed upon by the board.

The original petition, however, contains the following allegation:

"Taxpayer is informed and believes, and therefore avers, that said tax return erroneously treated contributions of capital for drilling gas wells on property owned by the partnership as income. If a tax return showing the true income received had been filed, it would show a loss for the year 1920."

In the very beginning of the supplemental petition, the petitioner averred that "the above-named taxpayer hereby supplements the original petition filed by him at the above docket number, for the purpose of stating further facts relied upon in said petition." This supplemental petition was, therefore, not an abandonment of the original petition or a substitution for it, but was a supplement, something in addition to, a statement of "further facts relied upon in said petition." The petitioner clearly stated his contention in the original petition, and it was unnecessary for him to restate it in his supplemental petition, whose purpose was to state "further facts."

In its opinion the tax board said:

"The error here assigned is broadly that the Commissioner has determined the income of the partnership for 1920 to be in excess of what it really was, when effect is given to all proper items of income and all allowable deductions. The problem, then, is to determine the correct income of the partnership."

Again, in explaining the nature of the $57,800, that it was income and not capital, the board said:

"The principal item which gives rise to the income in question is $57,800 received from the sale of certificates entitling the holders thereof to an interest in the future net earnings, if any, of the partnership. These holders were unlike stockholders in a corporation, in that they were merely entitled to share in anticipated net earnings and beyond this they had no voice in the business or right or interest in the property of the partnership prior to or upon dissolution, every obligation of payment to them being discharged when payment was made to them of their share of the net profits when earned and if none were earned they lost entirely. Whatever net earnings may have been derived and distributed in years subsequent to 1920 were deductible from the earnings of the partnership in determining the partners' distributable shares in such years. It is difficult to conceive of a basis upon which the amount of $57,800 might be deferred over the succeeding years. There was no investment by the partners of the amount of $57,800, nor was there any obligation that they should return this amount or any part of it to the purchasers of the certificates."

The conclusion is inescapable that the petitioner, in his appeal from the Commissioner to the board, brought squarely before it his contention that the $57,800 was capital, and not income, and that the board, in determining his income, did consider and pass upon the question of whether or not this money was capital or income.

The Commissioner says that whether or not the $57,800 was capital or income "is not covered by the assignment of errors in the petition for review." But in his petition for review, paragraph "Fourth," subsection 4, the petitioner said:

"The board erred in its conclusion that the accrual-method is not applicable in determining the income of the partnership for 1920, and that the entire amount of $57,800 received from the sale of certificates was properly included in the partnership income by the Commissioner of Internal Revenue, in his determination, as a part of the partnership's gross income for the year 1920."

The petition for review did thus squarely raise the contention. We think that the contention of petitioner is properly before us, as it was before the Board of Tax Appeals, and should be considered upon its merits.

If the proceeds from the sale of the certificates were income, and not capital, they belonged to the petitioner and his three associates; but there has been no allegation by any one that they belonged to them, so that they could dispose of them as they desired. This money was used for drilling and operating the wells. There were 600 certificates, and the holder of each certificate was entitled to one six-hundredth part of the net earnings derived from the production of any oil or gas from the wells drilled, less one-eighth royalty, which belonged to the company or partnership, the owner of the land on which the wells were drilled.

The assignment or sale of the certificates was made under the following terms:

"This share is nonassessable, and the assignee is not liable for any debts contracted by the company; hence the relationship between the company and the assignee, created by this assignment, is not one of partnership, but one of agency, for the distribution of any production, as evidenced by any net earning."

It would seem, therefore, that the company or the partnership was the mere agent of the certificate owners, for the purpose of drilling and operating the wells, and was handling the money in question, not for itself, but for the certificate owners. The $57,800 received from the sale of the certificates did not belong to the partners, and, if they had misused it, they could have been criminally prosecuted for embezzlement. Income is "gain derived from capital, from labor, or from both combined." Stratton's Independence v. Howbert, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285; Doyle v. Mitchell Brothers Co., 247 U. S. 179, 185, 38 S. Ct. 467, 62 L. Ed. 1054; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. In determining what constitutes income, substance rather than form is to control. It is clear that the money in question was not derived from capital or labor of the partners, or both combined. Consequently it is not income, within the meaning of the income tax statutes or the cases defining the same.

The Commissioner contends that this money was income to the partners, because capital rights were not granted to the holders of the certificates. The certificates are called ownership certificates, and each holder was entitled to his full proportional share of the entire net earnings of oil and gas secured from the wells. These certificate holders were the beneficial owners of the money which they paid in. They did not derive earnings from the capital of others, but from their own money, which was used for their benefit. While the certificates do not expressly grant capital rights to the holders or assignees, neither do they declare that the money belonged to the partners. The capital was intended to be spent and exhausted, and was spent and exhausted, in producing earnings which did belong to the certificate holders. The relation between them and the partners was one of agency. The certificate holders were willing to put the amount of money represented by their certificates into the enterprise, without assuming the burden of managing it or responsibility resulting from it. The money contributed by them was capital, and not income to the partners, within the meaning of the income tax statutes.

The decision of the board is reversed.