## ROBERTS v. STEELMAN et al.

(Circuit Court of Appeals, Third Circuit. July 14, 1924.)

No. 3185.

1. **Contracts ⧉173—Rule as to dependent covenants stated.**

The question whether covenants or stipulations are dependent or independent rests on the intention of the parties, to be determined from the sense of the entire instrument, rather than from any particular form of expression or the order in which the covenants appear; doubts being resolved in favor of dependent rather than independent covenants.

2. **Contracts ⧉173—Dependent and independent covenants distinguished.**

Covenants are dependent where performance by one party is conditioned on and subject to performance by the other, and in such case the party who seeks performance must show performance or a tender or readiness to perform on his part; but covenants are independent when actual performance of one is not dependent on another, and where, in consequence, the remedy of both sides is by action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent Covenant; Independent Covenant.]

3. **Corporations ⧉560(5)—Specific performance ⧉87—Covenants of contracts having a single purpose held mutually dependent; plaintiff must himself perform.**

Owners of stock of a corporation in the hands of receivers, who were also the principal creditors, contracted with defendant to sell him the stock and franchise and its plant and assets free of liens. They then contracted with the receivers to release their claims as creditors, and the receivers made a contract with defendant for the sale, which was approved by the court. This last contract referred to the other two, which were attached to and made a part thereof. *Held*, that the three contracts must be construed together; that their several provisions were mutually dependent and that specific performance could not be enforced against defendant without performance of the conditions of his original contract.

4. **Specific performance ⧉93—Contract of which time is essence; tender of performance held too late.**

Where time is of the essence of a contract, a suit for its specific enforcement is not supported by a tender of performance at the hearing, months after the time fixed by the contract.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Petition in equity by Andrew J. Steelman and William B. Anderson, receivers of the New York Continental Jewell Filtration Company, against Charles V. Roberts. From a decree granting the relief prayed for, respondent appeals. Reversed and remanded, with directions.

E. Wallace Chadwick, of Chester, Pa., and Robert H. McCarter, of Newark, N. J., for appellant.

Kessler & Kessler, of Newark, N. J., and Rosenberg & Ball, of New York City (Godfrey Goldmark, of New York City, of counsel), for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. This case calls for an interpretation of several writings touching related subjects entered into by several groups of persons.

The New York Continental Jewell Filtration Company, a corporation engaged in the manufacture of water filters with a plant at Nutley, New Jersey, was in the hands of receivers appointed by the District Court of the United States for the District of New Jersey. Henry B. Anderson and undisclosed associates owned or controlled substantially all of its capital stock and either represented or were themselves its principal creditors. Desiring to sell the plant, Anderson employed Arthur M. Crane to find a purchaser. Crane enlisted the interest of Charles V. Roberts, who, in turn, brought the matter to the attention of two other persons engaged in the same business. These men visited the plant, inspected the assets, learned their inventory value, and evidently made their own appraisal. The plant was on leased premises and the only physical assets for sale were the machinery, tools, finished and unfinished materials. Roberts and his companions examined the property with a view of purchasing it for their joint account. Contemplating such a purchase, though no agreement to this end had yet been reached, Roberts began negotiations. It is pertinent to note that negotiations were not begun with the receivers,—officials ordinarily first to be consulted with respect to the sale of property entrusted to their care and custody. They were begun with Anderson, who, acting for himself and his associate stockholders and creditors, conducted them to the point at which the contractual writings here involved were entered into. From these writings as well as from the preceding negotiations of sale it is clear that

all parties intended a complete transfer of the company to the purchaser, including practically everything it owned and every right it had. But this involved difficulties because its property and its rights were in the hands of diverse parties. Its property, tangible and intangible, was in the possession of receivers subject to the order of the court; its rights as a corporation, which, under the law of New Jersey, had not been divested, were still with its stockholders; and over and against all were the rights of its creditors. Movement of these fixed and opposite factors in one body was not possible; their movement in a train of events was therefore attempted.

On December 28, 1923, Roberts, with his attorney, had an interview with Anderson, himself a lawyer. A letter bearing that date was drafted by them, corrected, approved, signed by Roberts and accepted by Anderson. In this letter Roberts offered to purchase all the assets, property, rights and corporate franchises of the corporation (including its charter, name, goodwill, records, etc.), excepting only cash, accounts receivable and unadjusted credits and incompleted contracts and sales, free and clear from all liens and liabilities, for $70,000, of which $10,000 was to be paid, and was paid, at once and deposited in a special account to be held pending the execution of a formal agreement of sale with the receivers and to be applied to the purchase price on settlement or else be forfeited to the receivers as liquidated damages should Roberts default or be returned to him should the receivers fail to execute an agreement of sale or fail to sell and transfer the property to him or his nominees "absolutely in accordance with the terms of this offer." Roberts' offer was conditioned upon delivery to him, at the settlement, of several papers among which were the following: (a) A three months' lease from Anderson and his associates in ownership of the real property on which the plant was situated to enable him to assemble, catalogue and sell or otherwise dispose of the property purchased; (b) a release of all machinery and equipment of the plant from any existing lease and from all claims of the owners of the real property; (c) an agreement by Anderson and his associates in ownership of the capital stock of the company to sell to Roberts or his nominees all the capital stock owned and controlled by them for a nominal consideration. Anderson on the other hand undertook to induce the receivers to make the sale and the court to approve it, and to that end stipulated

that he would agree with the receivers that the very considerable claims of himself and his associates as creditors of the company should be waived in favor of the other creditors and be formally released as obligations of the company.

Anderson then took up the matter with the receivers. In January following, Anderson signed a letter drafted by the receivers and addressed to themselves, dated December 28, 1923, the date of the first instrument, in which he recited his understanding of the transaction and promised the receivers to turn over to them the $10,000 deposited by Roberts and deliver to them a waiver of their claims as creditors of the company amounting to something more than $2,500,000. On January 28, 1924, Roberts and the receivers formally executed a contract, the third instrument in the case, dated, however, December 28, 1923, the date of the former writings, in which the receivers promised to sell to Roberts the property of the company described in the first instrument for the sum there named upon approval by the court.

In due course the court approved the proposed sale. Anderson then delivered the $10,000 deposit to the receivers and February 21, 1924, was agreed upon as the date of settlement.

Roberts' associates in the contemplated purchase left him one by one, but on the agreed day he appeared at the appointed place prepared and ready to make the final payment of $60,000 and close the transaction. Of the papers which according to the several instruments should have been forthcoming at the settlement, the receivers produced a bill of sale in proper form and a waiver of claims by the large creditors. They also produced a three months' lease of the property on which the plant was located, signed, not by Anderson as had been expected, but by one Emery L. Ferris, who, appearing for the first time, was described as the holder of the legal title. The next paper which the receivers handed Roberts purported to be a release of the machinery and equipment by the owner of the premises signed by Ferris, who was disclosed as trustee for Anderson and his associates. It also developed that Ferris, or Anderson, had recently contracted to sell the property covered by the lease to the Gray Manufacturing Company, possession to be given a few days after the expiration of the lease tendered Roberts. This release was not signed by Anderson or by any of his associates or by the Gray Manufacturing Company, the

purchaser, a fact all the more pertinent because there immediately arose a question whether certain equipment were fixtures to remain on the premises or were chattels covered by the bill of sale and therefore removable. Lastly, the receivers wholly failed to tender an agreement by Anderson and his associates for the sale of the stock of the company. Trouble followed. Roberts, on advice of counsel, insisted upon delivery of all papers called for by the several writings, particularly a release of the chattels he was buying from liens and claims of the equitable or beneficial owners of the property on which they stood and an agreement for the sale of the stock. He regarded their delivery as conditions precedent to performance on his part. Signatures to such instruments were not available because the parties were in distant winter resorts. Their attorney, then present, promised, however, to procure them by March 15, following. Roberts declined to rely upon this promise, and the receivers, taking the position that these were matters solely between Roberts and Anderson, tendered Roberts the bill of sale and demanded the balance of the purchase money, which he refused to pay. There the matter stood until the receivers filed a petition against Roberts in the District Court reciting the contract of sale and its approval by the court; averring a tender of a bill of sale and Roberts' refusal to accept it and pay the balance of the purchase money; and praying that Roberts be ordered to pay the same or be adjudged guilty of contempt. At the hearing in May the receivers, attempting to comply with the provisions for a release of liens and the sale of stock, produced the papers which were either absent or defective at the settlement in February. The court held that the writings were independent contracts,—one between Roberts and Anderson and the other between Roberts and the receivers; that the receivers were concerned only with the latter and, accordingly, entered the decree prayed for. From this decree Roberts is here on appeal raising two questions of law. First, are the covenants in the several writings dependent upon or independent of one another; and second, if dependent, was the receivers' tender, at the hearing on the petition, of the documents called for by the contract such a compliance with its obligations as to give rise to a remedy by specific performance?

[1, 2] The law of dependent and independent covenants is clear; the trouble is in its application. Covenants are dependent where performance by one party is conditioned on and subject to performance by the other. In such case the party who seeks performance must show performance or a tender or readiness to perform on his part. Covenants are independent when actual performance of one is not dependent upon another and where, in consequence, the remedy of both sides is by action. The earlier cases recognized very nice distinctions in determining the character of covenants or stipulations of a contract. At one time courts were inclined to be controlled by forms of expression, their positions of precedence and the structure of the instrument rather than by the basic intention of the parties. The rule is now, however, thoroughly settled that the question whether covenants or stipulations are dependent or independent rests on the intention of the parties to be determined from the sense of the entire instrument rather than from any particular form of expression or the order, in time or place, in which the covenants appear; doubts, when present, being resolved in favor of dependent rather than independent covenants, so that a party may not be given the benefit of a contract without performing his own obligations. 13 C. J. 567–569. The intention of the parties must be gathered from their agreement as a whole and from all its terms considered together, for where a contract has many provisions it is manifest that the entire intention of the parties is expressed not by a single one but by all. Coca Cola Bottling Co. v. Coca Cola Co. (D. C.) 269 Fed. 796, 805; Loud v. Pomona Land & Water Co., 153 U. S. 564, 576, 14 Sup. Ct. 928, 38 L. Ed. 822.

Again, parties have a right to make their own contracts and they may, if they choose, agree that performance by one shall be a condition precedent to performance by the other. Courts should be on guard lest, unawares, and under the guise of construction, they look too intently for means to bring about some ultimate good or to thwart some apparent hardship and as a result build up a contract other than the one which the parties have made.

[3] The three groups of parties in this case held different positions with respect to one thing—the plant. In looking for their intention in dealing with that thing it is clear that the three writings into which they entered have but one object—the sale of the plant. Each writing concerns phases of the same subject matter, each is a part of one plan, and in each there is full mutuality of interests of the several groups. They tell one story. In a word, it is this:

Anderson and his associates were the principal owners and creditors of the company. They wanted to sell the company and its assets, which, for all practical purposes, they regarded as their own. But this they could not do for the company was in the hands of receivers whose consent had to be obtained. The receivers in turn were subject to the control of the court and the court's approval of the plan was the main essential. So Anderson and Roberts made an agreement which because of certain attractive features they thought would induce the consent of the receivers and the approval of the court. The receivers, desiring the advantages of this agreement, required Anderson to obligate himself to them and turn over to them Roberts' $10,000 deposit—a substantial ingredient in the transaction. They then prepared and required Roberts to sign a contract with themselves embodying certain, but not all, of the provisions of the agreement with Anderson—all three instruments bearing the same date though executed at widely different periods. Roberts wanted what he had contracted to buy, and he wanted it free of liens. The contract between Roberts and the receivers begins with the names of the parties in the usual form. In the very next sentence, by preamble, it refers to the agreement between Anderson and Roberts and the letter from Anderson to the receivers and by express terms states that, "copies of which are hereto annexed and made a part hereof." Continuing, the contract reads:

"In consideration of the premises (the only premises being the two instruments of which copies were annexed and made a part thereof) and of the mutual covenants herein contained, the parties have covenanted and agreed as follows."

[4] Reading these writings, which the parties by their own terms brought together, we regard them as one, and, observing the intention of the parties, we are forced to construe their several provisions as dependent one upon another. It follows that production by the receivers, at the settlement, of an agreement for the sale of stock and production of a proper release of liens and claims were conditions precedent to performance by Roberts. Moreover, we are satisfied that in their performance time was of the essence. This being true, it is equally clear that the tender of the necessary papers by the receivers months later at the hearing was not a compliance with their obligations.

The order of the District Court is therefore reversed and the case remanded with directions that a new order be entered commanding the receivers to return to Roberts the sum of $10,000 paid them through Anderson.