Myron A. ANDERSON, et al., Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 30565.

United States Court of Appeals,
Fifth Circuit.

July 20, 1971.

Leland E. Fiske, Dallas, Tex., for petitioners-appellants.

Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Thomas L. Stapleton, Attys., Tax Div., Dept. of Justice, K. Martin Worthy, Chief Counsel, Bobby D. Burns, Atty., I. R. S., Issie L. Jenkins, Atty., Dept of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before AINSWORTH, INGRAHAM and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal by Myron A. Anderson and his wife from an adverse Tax Court decision involving their federal income tax liability for the calendar year 1966. The sole question is whether taxpayers were entitled to an investment credit under Section 38 of the Internal Revenue Code of 1954 [1] on oil and gas well equipment, where the funds used to purchase the equipment were acquired through the assignment of production payments, and were pledged to be used for that purpose.

1. As amended by the Revenue Act of 1962, Pub.L. 87–834, § 2, 76 Stat. 960.

Taxpayers owned undivided fractional interests in oil and gas leases in certain Texas counties. They assigned production payments from their lease interests to Petroleum Investors, Ltd., with the understanding that the funds so realized were pledged to equip oil and gas wells on said leases.[2] On their 1966 federal income tax return taxpayers claimed an investment credit of $1,138 on the reported purchase of depreciable property having a cost of $16,264. The Commissioner of Internal Revenue allowed a partial credit on qualified investments, but disallowed an investment credit of $905 on oil and gas well equipment with a cost of $12,941, on the ground that taxpayers were not entitled to an investment credit on equipment purchased with pledged funds from the sale of production payments. The Tax Court concurred in the Commissioner's finding, Myron A. Anderson, 54 T.C. 1035 (1970). We affirm.

Property qualifies for the investment credit provided for in Section 38 of the Internal Revenue Code only if it is "section 38 property" as that term is defined in Section 48.[3] Section 48(a) (1), insofar as here applicable, defines "section 38 property" to include "only property with respect to which depreciation * * * is allowable * * *."[4] Taxpayers contend that this requirement is fully satisfied if the property is of a character subject to depreciation, whether or not the taxpayers themselves are entitled to the depreciation deduction provided for in Section 167 of the Internal Revenue Code of 1954. The Commissioner, in Treasury Regulations promulgated by him, takes a different view. Section 1.48–1(a) of the Treasury Regulations provides that the term "section 38 property" means property "with respect to which depreciation * * * is allowable to the taxpayer * * *." Section 1.48–1(b) (1) of the Treasury Regulations further provides that "Property is not section 38 property unless a deduction for depreciation * * * with respect to such property is allowable to the taxpayer for the taxable year."

It is clear that, if the Commissioner's interpretation is correct, the taxpayers cannot prevail in this suit, for no depreciation deduction is allowable to them on the equipment. According to established principles of oil and gas taxation, when taxpayers assigned production payments in exchange for funds pledged in advance to the purchase of equipment on the leases, they realized no gain on the transaction. See Thompson v. Commissioner of Internal Revenue, 3 Cir., 1928, 28 F.2d 247; Transcalifornia Oil Co., Ltd. v. Commissioner of Internal Revenue, 37 B.T.A. 119 (1938); G.C.M. 22730, 1941–1 Cum.Bull. 214; cf. United States v. Knox-Powell-Stockton Co., 9 Cir., 1936, 83 F.2d 423, cert. denied, 299 U.S. 573, 57 S.Ct. 37, 81 L.Ed. 422; Rogan v. Blue Ridge Oil Co., 9 Cir., 1936, 83 F.2d 420, cert. denied, 299 U.S. 574, 57 S.Ct. 38, 81 L.Ed. 423. By the same token, the taxpayers made no investment in the equipment obtained pursuant to

---

2. Paragraph 6 of each assignment contract provided in pertinent part:

This production payment is being assigned in consideration of the furnishing by Grantee of funds to be used in the purchase of casing, tubing, rods and pumping equipment, flow lines, tanks, fittings, connections, separators and miscellaneous equipment to the extent of the amount of the production payment to be installed on said lands. Any portion of the primary sum not used in equipping wells on said property shall be credited to the production payment in reduction of the principal amount thereof. * * *

3. See Sections 38, 46(a) (1), 46(c).

4. The full text of this part of Section 48(a) (1) is as follows:

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more. It is undisputed that the property involved in this case had, at the time it was placed in service, a useful life of eight years or more.

this transaction which would entitle them to a return of capital through the depreciation deduction. The assignee, Petroleum Investors, Ltd., and not the taxpayers, provided the funds for the equipment.

> [I]f the owner of the working interest assigns an oil payment for the equipping of the well, neither party has any depreciable investment—the supplier of equipment capitalizes as depletable cost the expenditures made by him, and the owner of the working interest has made no investment in depreciable property.

Breeding and Burton, Income Taxation of Natural Resources, § 7.05 (1971); *accord,* G.C.M. 22730, supra; Prentice-Hall Oil & Gas Taxes ¶ 1006.1 at 1085–86; see C. A. Happold, Prentice-Hall BTA-TC Memo Dec. ¶ 42,625 (1942), affirmed, 5 Cir., 1944, 141 F.2d 199; cf. United States v. Georgia Railroad and Banking Company, 5 Cir., 1965, 348 F.2d 278, 288–289, cert. denied, 382 U.S. 973, 86 S.Ct. 538, 15 L.Ed.2d 465.

■ We affirm the Commissioner's interpretation of Section 48(a) (1) of the Code, and hold that because no deduction for depreciation was allowable to the Andersons for 1966 with respect to the equipment, they may not claim an investment credit thereon. Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the statute. Commissioner of Int. Rev. v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); Fawcus Mach. Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397 (1931); see Whirlwind Manufacturing Company v. United States, 5 Cir., 1965, 344 F.2d 153, 156. The regulations here in question have no such defect. There is support for them in the legislative history of the statute, see H.R.Rep. No. 1447, 87th Cong., 2d Sess., pp. 9–16, and in the structure of the tax-credit provisions of the Code.[5] The regulations were correctly applied in this case, and the tax credit properly denied.

■ The Tax Court held for the Commissioner below on the alternative ground that the taxpayers had no basis in the equipment. This ground too is valid. Section 46(a) (1) provides that "The amount of the credit allowed by section 38 for the taxable year shall be equal to 7 percent of the qualified investment (as defined in subsection (c))." Subsections 46(c) (1) and (c) (2) define "qualified investment" in the case of new property in terms of a percentage of the taxpayer's basis in such property. As the Tax Court points out: "Without a basis in the property, there could be no 'qualified investment.' Applying the multiplier in section 46(c) (2) would produce a 'zero' investment credit." Myron A. Anderson, 54 T.C. 1035, 1040 (1970).

The taxpayers' claim to a basis in the property is without merit. Section 1012 of the Internal Revenue Code of 1954 provides that "The basis of property shall be the cost of such property * * *" The Supreme Court has construed this provision in a case in many ways analogous to the instant case. In Detroit Edison Co. v. Commissioner of Int. Rev., 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286 (1943), the taxpayer, an electric utility, sought depreciation deductions on $1,160,000 worth of equipment. Certain prospective customers had applied to the company for service, which, in the company's opinion, would require an investment in extension of its facilities greater than the prospective revenues therefrom would warrant. The company agreed to render the service on the condition that the applicants pay the estimated cost of the necessary construction. The equipment was thereupon installed and paid for by the customers themselves. The Commissioner disal-

---

5. By virtue of Sections 46(a) (1) and (c), the amount of the credit depends on the taxpayer's basis or cost in the property. At one time, in fact, section 46(g) of the Code (now repealed) provided that the taxpayer's basis in section 38 property was to be reduced by the amount of the credit.

lowed the company's claim to depreciation deductions on the equipment, and the Supreme Court affirmed.

> [W]e think the statutory provision that the "basis of property shall be the cost of such property" * * * normally means, and that in this case the Commissioner was justified in applying it to mean, cost to the taxpayer. A property may have a cost history quite different from its cost to the taxpayer. * * * [G]enerally and in this case the Commissioner was in no error in ruling that the taxpayer's outlay is the measure of his recoupment * * *.

319 U.S. at 102, 63 S.Ct. at 904. The funds in the instant case were pledged funds furnished to the taxpayers by Petroleum Investors, Ltd. Taxpayers made no outlay of funds for the equipment. Having no basis, therefore, they had no "qualified investment" for purposes of the investment credit.

The judgment of the Tax Court is affirmed.