Arwin **LOWELL and Mary Lowell, Plaintiffs,**

v.

**SECRETARY OF the DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and the City of San Jose, Defendants.**

**No. C–76–987 SC.**

United States District Court, N. D. California.

Dec. 16, 1977.

Mark G. Hyde, San Jose, Cal., for plaintiffs.

G. William Hunter, U. S. Atty., for defendants.

Maurice D. Laymon, Asst. Regional Counsel, Dept. of Housing & Urban Development, San Francisco, Cal., for H.U.D.

Peter G. Stone, City Atty., Franklin T. Laskin, Deputy City Atty., San Jose, Cal., for City of San Jose.

## ORDER

CONTI, District Judge.

Plaintiffs Arwin and Mary Lowell, owners of a business known as the House of

Cheese, bring suit for judicial review of agency action and declaratory relief against defendants Secretary of the Department of Housing and Urban Development and the City of San Jose. Plaintiffs generally contend that they were improperly denied relocation assistance benefits when in anticipation of a proposed redevelopment project they relocated their business to premises outside the proposed project area. Plaintiffs rest the major portion of their case on an argument that HUD regulations are arbitrary and capricious and contrary to Congressional intent as expressed in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq.*, in that the regulations define "displaced persons" entitled to benefits as persons who move from real property on or after the execution of a federal contract for the project or on or after HUD approval of the project budget. *See* 26 C.F.R. § 42.55(b) (May 13, 1971).

## FACTS

It is undisputed that plaintiffs relocated their business prior either to the execution of the project contract or approval of the project budget, obtaining new premises in March, 1971, and moving in April, 1971. HUD approved the Mayfair One Redevelopment Project budget on October 15, 1971; its Loan and Grant Contract with the San Jose Redevelopment Agency was executed December 14, 1971.

Plaintiffs nonetheless point to other facts which they contend reasonably led them to regard the project as so imminent and certain as to require immediate relocation. Among these they cite HUD approval of a redevelopment agency survey and planning grant in July, 1970; inspection of the House of Cheese property on October 20, 1970, by redevelopment agency and City of San Jose personnel; refusal of plaintiffs' landlord in late 1970 to relet the premises on a fixed term lease basis as a result of meetings between the landlord and Redevelopment Agency officers regarding proposed redevelopment plans for the area; rumors at or near this time of possible redevelopment of the Mayfair area; a notice of hearing on a proposed Mayfair redevelopment plan published on February 26, 1971, by the City of San Jose; another notice mailed to "Resident" at plaintiffs' business address on March 2, 1971, announcing this same hearing; and adoption of the project plan by the San Jose City Council on March 29, 1971, at the conclusion of that hearing.

So far as the record shows, plaintiffs made no attempt to determine their eligibility for relocation assistance until after they made their move. On May 24, 1971, plaintiffs' counsel was orally advised by an officer of the redevelopment agency that plaintiffs would not be eligible unless they were in occupancy of the Mayfair premises when a contract with HUD was executed. On October 26, 1971, following HUD approval of the project budget, plaintiffs' counsel requested processing of plaintiffs' claim by the redevelopment agency. On November 16, 1971, the agency declined on the ground that no contract as yet had been signed. Finally, on April 25, 1972, the redevelopment agency advised plaintiffs' counsel that the contract had been signed but that on the basis of regulations issued under the Uniform Relocation Act which "will be effective for processing relocation payments for Mayfair I project" claims, plaintiffs probably would not be entitled to any relocation benefits because their Mayfair premises had not been acquired by the agency while their business was in operation there.

The redevelopment agency eventually took over the Mayfair property on April 19, 1974, approximately three years after plaintiffs moved their business out of the area. Plaintiffs renewed their claim in an undated application which was formally denied on July 8, 1974, on the ground that the House of Cheese had vacated the Mayfair premises prior to execution of the HUD contract.

Plaintiffs appealed to the Director of San Jose Property and Code Enforcement, who consulted with HUD officials before ruling that plaintiffs indeed were ineligible. Plaintiffs next appealed to the San Jose Housing Board, sitting as the Relocation

Assistance Appeals Board, which decided on May 12, 1975, to recommend to the City Council that plaintiffs be awarded relocation expenses.

But at this point confusion arose as to proper procedural channels, the City Property Department recommending that the Appeals Board recommendation be presented to HUD "because the project involved is a HUD project", and plaintiffs seeking consideration of the Appeals Board recommendation by the City Council inasmuch as the matter had been referred to it. The City Council considered the recommendation on June 3, 1975, but denied the claim on the grounds that it was not the proper appellate forum and, in any event, plaintiffs did not meet eligibility guidelines. On reconsideration July 1, 1975, the City Council again determined it was not the proper body to reconsider relocation appeals involving "HUD projects."

The appeal then was referred to HUD for administrative review of the redevelopment agency's decision and the Appeals Board's recommendation. HUD Deputy Area Director G. Richard Schermerhorn ruled on March 3, 1976, that the Lowells did not qualify for benefits, again pointing to the fact of the House of Cheese's too-early departure from the Mayfair premises.[1] Suit was filed in this court on May 13, 1976.

## LAW

*Does the court have jurisdiction?*

 The court has jurisdiction to review the action of the Secretary and of the City of San Jose pursuant to 28 U.S.C. § 1331(a). *See Tullock v. State Highway Commission of Missouri*, 507 F.2d 712 (8th Cir. 1974); *Whitman v. State Highway Commission of Missouri*, 400 F.Supp. 1050 (W.D.Mo.1975); *La Raza Unida v. Volpe*, 337 F.Supp. 221 (N.D.Cal.1971), *aff'd*, 488 F.2d 559 (9th Cir. 1973), *cert. denied*, 409 U.S. 890, 93 S.Ct. 105, 34 L.Ed. 147 (1972); *cf. Lathan v. Volpe*, 455 F.2d 1111 (9th Cir. 1971); *Western Addition Community Organization v. Weaver*, 294 F.Supp. 433 (N.D. Cal.1968). The court will conduct its review within the framework provided by the Administrative Procedure Act, 5 U.S.C. § 706.

*Which law applies?*

All proceedings to this point have been conducted on the assumption that the Uniform Relocation Act and HUD regulations promulgated in accordance with its mandate govern plaintiffs' claim. *See* 42 U.S.C. § 4601 *et seq.*; 24 C.F.R. Part 42 (1971), *printed at* 36 Fed.Reg. 8785-98 (May 13, 1971). No party has challenged that assumption.

However, the Uniform Relocation Act did not take full effect on its enactment date, January 2, 1971. Certain sections became applicable only as the pertinent state became *able* to comply with their requirements, and until such state compliance was possible, certain prior federal relocation statutes remained unrepealed and operative. Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub.L. 91-646, § 221, 84 Stat. 1894 (1971); *see Lathan v. Volpe, supra* at 1117 n. 2.[2]

Similarly, by their own terms the new implementing regulations took effect only as each pertinent local redevelopment agency *did* comply by furnishing assurances required under section 210 of the Uniform Relocation Act. Until these assurances were given, the 1970 regulations contained

---

1. Congress specified that "any person aggrieved by a determination as to eligibility for a payment authorized by this chapter . . . may have his application reviewed by the head of the Federal agency having authority over the applicable program or project, or in the case of a program or project receiving Federal financial assistance, by the head of the State agency." 42 U.S.C. § 4633(b)(3). Regulations current when plaintiffs made their appeal for HUD review provide for a redetermination by the Area Director. 24 C.F.R. § 42.330 (1977). As the Area Director and the Deputy Area Director exercise concurrent review authority, 39 Fed.Reg. 5353 (1974), plaintiffs have exhausted their administrative remedies.

2. The Act took full effect on July 1, 1972, whether the States were then able to comply or not.

in Part 41 of 24 Code of Federal Regulations remained in effect; once they were given, however, the new regulations were to have retroactive effect to whatever date the local agency had obtained the *ability* to make its assurances. 24 C.F.R. § 42.25 (May 13, 1971), *printed at* 36 Fed.Reg. 8785 (1971); for the prior 1970 regulations, see 35 Fed.Reg. 14307–14 (1970).

So far as the record reflects, the San Jose Redevelopment Agency did not make the assurances required by section 210 until December 14, 1971, when the contract between HUD and the agency was executed. Exhibit A, at 37; contract, at 9. Thus, if the effectiveness provision of the 1971 regulations is accepted as valid, the 1970 regulations continued in effect until that date, but, provided the agency had earlier been able to make assurances, the 1970 regulations were thereby retroactively superseded by the new regulations, which took effect from whatever date the agency had obtained its *ability* to make its assurances.

It is a close question whether the San Jose Redevelopment Agency was able to make the assurances it made when it did, let alone earlier. *Compare* Cal.Stats.1963, ch. 1812, p. 3696, *as amended,* Cal.Stats. 1969, ch. 955, p. 1902, *as amended,* Cal.Stats. 1970, ch. 1359, *and* Cal.Stats.1969, ch. 1489, *as amended,* Cal.Stats.1970, ch. 984, *with* Cal.Stats.1971, ch. 1574. Enactment of the Uniform Relocation Act necessitated considerable adjustment of California law in order to bring state relocation programs into compliance with the federal act, legislation which did not become law until the 61st day after the final adjournment of the California Legislature in 1971, a date sometime subsequent to November 30, 1971. Comment, *Relocation Assistance in California: Legislative Response to the Federal Program,* 3 Pac.L.J. 114, 115 (1972).

██ The court holds that the San Jose Redevelopment Agency was not able to make its assurances until a date after plain-

tiffs moved from Mayfair One in April, 1971. Accordingly, relocation assistance provided pursuant to federal law was governed by 42 U.S.C. §§ 1415(7)(b)(iii), (8) (second sentence), 1465, 3071–74, and 3307(b), (c) (Supp. V, 1965–69), and 42 U.S.C. §§ 1465–69), and 42 U.S.C. § 1465 (1964), in addition to the provisions of the Uniform Relocation Act other than sections 210 and 305. Further, the 1970 regulations continued in effect at all times pertinent to plaintiffs' eligibility for relocation assistance.

*Are plaintiffs eligible for relocation assistance?*

██ The 1970 HUD regulations make it plain that the Lowells do not qualify for relocation assistance. As plaintiffs were not displaced on or after the dates of execution of the HUD contract or HUD approval of the project budget, and as the House of Cheese Mayfair property had not been acquired prior to either of those dates, relocation payments are precluded under 24 C.F.R. § 41.22(a) (Sept. 11, 1970).[3]

*Are the HUD regulations arbitrary, capricious, or contrary to law?*

Assuming the 1971 regulations to apply, plaintiffs have concentrated their fire on those regulations, attacking them as arbitrary, capricious, and contrary to the expressed Congressional intention that such regulations set forth a "uniform and effective" policy that "will assure fair and equitable treatment for displaced persons . . . ." H.Rep.No.91–1656, 91st Cong., 2d Sess. (1970), *reprinted in* 1970–3 U.S. Code Cong. & Admin.News, pp. 5850, 5867 [hereinafter cited as House Report]. The HUD eligibility time of occupancy criteria bear no relationship to Congressional goals, they argue, other than the maintenance of rigidly uniform standards. But they contend that this uniformity is preserved at the expense of fair and equitable treatment,

---

**3.** An issue concerning plaintiffs' apparent failure to comply with the notice of intention to move regulation, 24 C.F.R. § 41.6 (Sept. 11, 1970), has also been raised before this court.

But as the question was not raised or considered by the administrative agency, the court will not address it.

since the regulations would deny them assistance whether or not agency action "prompted" them to abandon their Mayfair location when they did.

The Lowells concede that Congress intended HUD to apply uniform standards to individually unique claims for assistance, but they insist that by specifying "equitable" treatment Congress also intended HUD's procedures and regulations to afford fair determinations as well. Equity, they maintain, is a function of discretion; the inflexible rules promulgated by HUD are arbitrary and capricious and contrary to law because they fail to allow for discretion and variance where fairness demands, citing *United States v. Braddy*, 320 F.Supp. 1239 (D.Or.1971).

█ The substantial similarity of the 1970 regulations to those challenged leads plaintiffs to attack them on the same grounds and the court will, therefore, treat their argument as directed against them.[4] That the challenge is not misdirected seems made clear by the House Committee on Public Works' report discussing the Uniform Relocation Act. Notwithstanding recognition that implementing regulations might be delayed, "the Committee believes that there is no justification for delay in the effective date of the bill except as required by State law." House Report, at 5870–71. Since section 213 of the Uniform Relocation Act, 42 U.S.C. § 4633, mandating regulations which are "fair and reasonable, and as uniform as practicable," and section 201, *id.* § 4621, declaring the Act's purpose to be "to establish a uniform policy for the fair and equitable treatment of persons displaced," were parts of the Uniform Relocation Act effective from date of enactment, January 2, 1971, it must follow that whatever regulations existed until the 1971 regulations became effective also were intended to be judged by the standards of section 213 and those contained in any other operative provisions of the Act.

Among these were the eligibility provisions. "Eligibility for benefits rest [sic] upon enactment," the House Committee reported, "even though payments may be delayed pending implementing regulations." House Report, at 5871. Thus, per section 202, 42 U.S.C. § 4622, any "displaced person" was eligible for relocation payments "whenever the acquisition of real property . . . [would] result in the displacement of any person on or after January 2, 1971 . . . ." The term "displaced person" was defined to mean any person who, among other possibilities, on or after January 2, 1971, "moves . . . as a result of the acquisition of . . . real property . . . for a program or project undertaken by a Federal agency, or with Federal financial assistance . . . ." Uniform Relocation Act § 101(6), 42 U.S.C. § 4601(6). "It is immaterial," the House Committee explained, "whether the real property is acquired before or after the effective date of the bill . . . . The controlling point is that the real property must be acquired for a Federal or Federal financially assisted program or project." House Report, at 5853.

No more is required. To the extent that the 1970 HUD regulations contain any eligibility requirement more restrictive than these, it is contrary to Congress' intent and thus contrary to law. *Tullock v. State Highway Commission of Missouri, supra* at 716–17; see *Whitman v. State Highway Commission of Missouri, supra* at 1066–68.

It might be suggested, however, that the time of occupancy requirement is not additional to nor more restrictive than the Congressionally expressed requirements but is expressive of its intention that relocation payments go only to persons displaced "as a result of" acquisitions for Federal or Federally assisted projects. In this view, persons moving before the execution of a HUD contract, or before HUD approval of a project budget, are conclusively and uniformly regarded as not having moved because of acquisitions pertaining to a federal program or project; conversely, relocations in accordance with the regulations are to be uniformly regarded as having been caused by such project acquisitions.

---

4. *Compare* 24 C.F.R. § 41.22(a) (Sept. 11, 1970), *with id.* § 42.55(a) (May 13, 1971).

Such a construction is not wholly unreasonable. Prior to execution of a federal contract or federal approval of a project budget, the federal character of any local project must be speculative. *Feliciano v. Romney*, 363 F.Supp. 656, 669–72 (S.D.N.Y. 1973). The time of occupancy regulation serves in part to provide a uniform standard for dividing relocations caused by hypothetical federal projects from those caused by actual federal projects.

Nor is it a fatal defect that such rules will necessarily have some inequitable impact. It is axiomatic that uniform regulations sometimes will operate inequitably. Congress conceded the occasional inevitability of that result by making its declaration in favor of equitable treatment and its goal of uniformity mutually conditional, specifying that its purpose was to avoid the infliction of "disproportionate" injury on displaced persons. 42 U.S.C. § 4621. It appears to have believed that by eliminating the "great" inconsistencies which had existed among the various federal and federally assisted programs, uniform treatment would result in equitable treatment as a general matter, clearly a more humanitarian outcome than had been the fact. House Report, at 5851–52.

■ The court is mindful that Congress directed agency regulations to be drafted so as to accomplish payments "in a manner which is fair and reasonable, and as uniform as practicable." 42 U.S.C. § 4633(b)(1). Whether the uniformity accomplished here was practicable only at the expense of fairness and reason is a point on which obviously people can differ. But regulations of an administrative agency must be sustained unless they are plainly inconsistent with the statute. *E. g., Anderson v. Commissioner of Internal Revenue*, 446 F.2d 672 (5th Cir. 1971); *United States v. Ekberg*, 291 F.2d 913 (8th Cir. 1961), *cert. denied*, 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135 (1961); *see Moore v. Great Western Savings & Loan Service*, 513 F.2d 688, 690 (9th Cir. 1975), *citing Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

[The] court has no warrant to set aside agency action as arbitrary and capricious when those words mean no more than that the judges would have handled the matter differently had they been agency members. Judicial intervention must, instead, be rested upon a demonstration that the agency action has transgressed the statutory boundaries, . . . because it is beyond the scope of statutory authority . . . . .

*Calcutta East Coast of India & East Pakistan/U.S.A. Conference v. Federal Maritime Commission*, 130 U.S.App.D.C. 261, 264, 399 F.2d 994, 997 (1968).

■ Between the twin goals of reasonable fairness and practical uniformity must rest a certain amount of agency discretion as to the standards to be set. In economic matters such as this, the court does not think that HUD's choice of standards invalidates its regulations when their operation and effect are not plainly inconsistent with Congress' announced purposes. *Cf. Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 23–24, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The court, therefore, holds that the eligibility criteria contained in 24 C.F.R. § 41.22(a) (Sept. 11, 1970), are not arbitrary, capricious, or contrary to law.[5]

Summary judgment shall be entered for defendants.

---

**5.** To the extent that the 1971 regulations apply, the court holds that the eligibility criteria contained in 24 C.F.R. § 42.55(a) (May 13, 1971) are not arbitrary, capricious, or contrary to law.